UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALBERTO D. BTESH, as Guardian of
RONALD S. BTESH,

        Plaintiff,

-vs-                                                             Case No. 6:10-cv-71-Orl-19DAB

CITY OF MAITLAND, FLORIDA, REBECCA
DENICOLA, AMANDA PAYNE, MICHELLE
McEACHERN, and JEWEL METHIAS,

        Defendants.

_____

# ORDER

This case comes before the Court on the Motion to Dismiss by Defendants Michelle McEachern and Jewel Methias. (Doc. No. 3, filed Jan. 12, 2010.)

**Background**

**I. Plaintiff's Allegations**[1]

This case is brought by Plaintiff Alberto D. Btesh as the guardian of Ronald S. Btesh ("Btesh"), a man who allegedly has the mental capacity of a nine year-old and suffers from a number of mental illnesses. (Doc. No. 2 ¶¶ 22, 24.) Plaintiff maintains that Btesh's mental illnesses were documented by four Maitland Police Department Incident Reports made prior to December 22, 2008, the last of which was dated November 16, 2008. (*Id.*) During each of these four incidents, the City of Maitland ("City"), through its police department, allegedly communicated with Nohemy

---

[1] The facts presented in this Order are derived from the allegations of the Complaint. These facts are included only to provide context and should not be construed as findings of fact.

Castelblanco, Btesh's live-in caregiver, who speaks only Spanish. (*Id.* ¶ 23.) Plaintiff asserts that the City had access to these incident reports documenting Btesh's mental condition. (*Id.* ¶ 25.)

On December 22, 2008, Castelblanco allegedly called 911 to obtain emergency medical assistance for Btesh from the City. (*Id.* ¶ 26.) Plaintiff asserts that Michelle McEachern or Jewel Methias ("Operator"),[2] 911 operators acting as agents or employees of the City,[3] received Castelblanco's call. (*Id.* ¶¶ 16, 27, 31, 36.) Plaintiff further maintains that although Castelblanco told the Operator that Btesh "is crazy" and that "he attacked me," the Operator became frustrated with her inability to communicate with Castelblanco and abruptly concluded that a rape had occurred. (*Id.* ¶ 29.) Accordingly, the Operator categorized Castelblanco's call for emergency medical assistance as a "sexual battery in progress" and dispatched Officers Rebecca Denicola and Amanda Payne of the Maitland Police Department to Btesh's residence. (*Id.* ¶¶ 12, 14, 30, 31, 48.)

Plaintiff alleges that upon losing contact with the Operator, Castelblanco immediately contacted an English-speaking friend, Alida Ramirez, who called 911 to ensure that the City understood the nature of the Castelblanco's request for emergency medical assistance for Btesh. (*Id.* ¶ 32.) Ramirez allegedly told the Operator that Btesh "is mentally sick" and needs "to go to the hospital." (*Id.* ¶ 34.) Plaintiff asserts that the Operator maintained a dismissive tone with Ramirez, ignored Ramirez's request for emergency medical services, and continued to erroneously conclude

---

[2] It appears that Plaintiff does not know which of the two 911 operators took the alleged actions. (*See* Doc. No. 2 ¶¶ 27-48.) Accordingly, the Court will construe the pleadings to allege that McEachern or, alternatively, Methias received and dispatched the 911 calls at issue. Fed. R. Civ. P. 8(d)(3), (e).

[3] Plaintiff alleges that at all times material to this case, the cities of Maitland and Apopka had an Interlocal Agreement under which the City of Apopka was delegated the duty of operating, managing, controlling, dispatching, and communicating all emergency 911 calls made from the City of Maitland. (Doc. No. 2 ¶ 7.) This factual allegation does not affect the legal analysis and result reached by the Court on the instant Motion.

that a sexual battery had occurred. (*Id.* ¶ 35.) Further, Plaintiff contends that the Operator inserted the issue of rape into both 911 calls. (*Id.* ¶ 38.) Plaintiff also maintains that the Operator failed to dispatch updated, accurate, or additional information to the employees of the City who responded to the scene, including Officers Denicola and Payne. (*Id.* ¶ 36.)

Plaintiff alleges that the Operator and Officers Denicola and Payne had access to a database containing information about prior calls for emergency services at Btesh's home and thus knew or should have known about Btesh's mental illnesses and his history of involuntary Baker Act proceedings. (*Id.* ¶¶ 39-44.) In addition, Plaintiff asserts that the Operator knew or should have known from the 911 records that Castelblanco spoke only Spanish because such records showed that on November 16, 2008, a 911 operator requested the assistance of a Spanish-speaking operator to handle Castelblanco's call requesting emergency medical services for Btesh. (*Id.* ¶¶ 46-47.) Plaintiff maintains that the Operator should have requested a Spanish-speaking 911 operator to handle Castelblanco's call on December 22, 2008. (*Id.* ¶ 47.)

Plaintiff alleges that Officers Denicola and Payne were not trained to respond to calls for service regarding the mentally ill, were not Crisis Intervention Team trained,[4] and were not "sworn officers specially trained and designated to handle situations involving the mentally ill in crisis." (*Id.* ¶ 49.) Denicola and Payne allegedly had been employed by the City as police officers for three years and eighteen months, respectively. (*Id.* ¶¶ 50-51.) Plaintiff maintains that by dispatching Denicola and Payne to Btesh's residence, the Operator and the City violated Maitland Police Department Policy and Procedure Directive Number 705-2001, which states:

---

[4] Crisis Intervention Team training is allegedly a course used to educate the City's police officers on how to calm and contain situations to ensure public safety, including encounters with individuals suffering from mental illnesses. (Doc. No. 2 ¶ 52.)

> It shall be the policy of the Maitland Police Department to participate in the Central Florida Crisis Intervention Team. Specially trained officers will respond to calls involving the mentally ill in crisis and explore alternatives to arrest when appropriate.

(*Id.* ¶ 54.) Plaintiff further maintains that Officers Denicola and Payne were not properly trained or capable of responding to a call involving rape, sexual assault, sexual battery, or any other forcible felony. (*Id.* ¶ 57.) Plaintiff asserts that if Denicola and Payne believed that they were responding to a rape, sexual assault, sexual battery, or other forcible felony, the applicable police procedures required them to recognize and control the situation presented to them and wait for additional officers to assist in securing the alleged victim and entering Btesh's residence. (*Id.* ¶ 58.)

When Officers Denicola and Payne arrived at Btesh's residence, Castelblanco was allegedly standing in the open doorway to the apartment and told Denicola and Payne that Btesh was mentally ill. (*Id.* ¶¶ 59-60.) Plaintiff maintains that Denicola and Payne entered Btesh's residence with their firearms drawn and knowingly allowed Castelblanco to accompany them inside the apartment. (*Id.* ¶ 61.) Plaintiff further alleges that once inside the apartment, Payne remained in the hallway while Denicola stepped into the living area. (*Id.* ¶ 62.) Payne and Denicola allegedly ordered Btesh to come out of his bedroom. (*Id.* ¶ 63.) Plaintiff asserts that Btesh complied and walked down the hallway toward Payne and Denicola with his hands plainly visible and empty of any weapons or objects. (*Id.* ¶¶ 64-66.) Plaintiff further maintains that as Payne and Denicola shouted orders to Btesh, they realized that Btesh was not in control of his faculties. (*Id.* ¶ 67.) As Btesh continued to walk down the hallway, Payne allegedly retreated outside the apartment while Denicola and Castelblanco remained inside. (*Id.* ¶¶ 68-69.) Btesh then locked the door to his apartment and walked toward Denicola, who was near the kitchen area. (*Id.* ¶¶ 70, 72.) Plaintiff maintains that at this point, four minutes after arriving on the scene, Denicola fired three 9mm bullets into the body

of Btesh. (*Id.* ¶¶ 73-74.) Plaintiff asserts that as a result of the aforementioned events, Btesh suffered damages, including, but not limited to, bodily injury, aggravation of preexisting mental injuries, medical expenses, and property damage. (*Id.* ¶ 76.)

**II. Procedural History**

On February 17, 2009, Plaintiff sent a Notice of Tort Claims to the City. (Doc. No. 2-8.) On November 13, 2009, Plaintiff filed a twenty-count complaint against the City, Rebecca Denicola, Amanda Payne, Michelle McEachern, and Jewell Methias in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida. (Doc. No. 2.) On January 5, 2010, Defendants McEachern and Methias moved to dismiss the claims of negligence against them in Counts X and XI of the Complaint. (Doc. No. 3, filed Jan. 12, 2010.) On January 12, 2010, the City removed the case to this Court. (Doc. No. 1.) Plaintiff has not filed a response to the Motion to Dismiss by Defendants McEachern and Methias.

**Standard of Review**

**I. Motion to Dismiss**

In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state

a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

**Analysis**

In Counts X and XI of the Complaint, Plaintiff claims that McEachern and Methias, respectively, negligently handled the 911 calls made by Castelblanco and Ramirez on December 28, 2008. (Doc. No. 2 at 30-35.) McEachern and Methias argue that these claims of negligence should be dismissed because they are entitled to absolute immunity for any negligent conduct in which they may have engaged while acting as agents or employees of the City of Maitland. (Doc. No. 3 at 2-3.)

Pursuant to Section 768.28(9)(a), Florida Statutes (2010), an officer, employee, or agent of the state or any of its subdivisions cannot be held liable in tort for any actions taken within the scope of employment unless such actions were taken in bad faith, with a malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Plaintiff alleges that

McEachern and Methias were acting within the course and scope of their agency or employment as 911 operators for the City at all times material to his claims, including when they handled the 911 calls of Castelblanco and Ramirez and dispatched Officers Denicola and Payne to Btesh's residence. (Doc. No. 2 ¶¶ 16-19, 27-48.) Thus, the limitation on employee liability imposed by Section 768.28(9)(a) applies to Plaintiff's claims of negligence against McEachern and Methias in Counts X and XI.

Ordinary or gross negligence, without more, does not meet any of the standards of conduct listed in Section 768.28(9)(a). *Elliott v. Dugger*, 579 So. 2d 827, 831 (Fla. 1st DCA 1991). "Bad faith" under Section 768.28(9)(a) has been equated with "actual malice," which requires proof of an "evil intent or motive." *Olson v. Johnson*, 961 So. 2d 356, 359 (Fla. 2d DCA 2007); *Parker v. Fla. Bd. of Regents*, 724 So. 2d 163, 167 (Fla. 1st DCA 1998). In addition, "the phrase 'wanton and willful disregard' connotes conduct much more reprehensible and unacceptable than mere intentional conduct." *Richardson v. City of Pompano Beach*, 511 So. 2d 1121, 1123 (Fla. 4th DCA 1987). McEachern and Methias point out that Plaintiff labels the claims against them "negligence" and that Plaintiff does not directly allege that McEachern and Methias acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. (Doc. No. 3 at 4.) These facts alone are not dispositive because the Court attaches no weight to the labels of a plaintiff's claims or the legal conclusions pled. *Iqbal*, 129 S. Ct. 1949. Rather, the Court must determine whether it may be reasonably inferred from the factual allegations that McEachern and Methias acted in bad faith, with a malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. *Id.*

Plaintiff alleges that McEachern and Methias owed Btesh a duty to "gather, collect, and obtain relevant and accurate information from citizens' complaints and calls for emergency service and disseminate accurate and complete information to law enforcement, including employees of the City and the Maitland Police Department." (Doc. No. 2 ¶¶ 144, 148.)  Plaintiff further maintains that McEachern and Methias breached that duty by: (1) failing to request the assistance of a Spanish speaker to handle Castelblanco's 911 call; (2) failing to utilize the City's databases to research and disseminate the history of previous calls for emergency services involving Btesh, Castelblanco, and Btesh's residence; (3) suggesting that a rape, sexual battery, sexual assault, or other forcible felony was in progress or had taken place when neither Castelblanco nor Ramirez had reported such an event; (4) failing to obtain additional and detailed information from Ramirez during the second 911 call; (5) failing to dispatch City employees who were trained to respond to calls involving the mentally ill in crisis; (6) failing to dispatch City employees who were properly trained, educated, or experienced in responding to calls involving alleged rape, sexual assault, sexual battery, or other forcible felonies; (7) failing to dispatch updated, accurate, and complete information pertaining to Ramirez's second call regarding Btesh's mental illness and need for medical assistance; (8) failing to follow or adhere to the City's rules, policies, regulations, or guidelines regarding 911 operations and dispatching; (9) failing to obtain appropriate training for: crisis intervention relating to calls involving the mentally ill in crisis, disseminating complete and accurate emergency information to law enforcement, receiving calls from bilingual or non-English speaking citizens, or dispatching law enforcement to calls for emergency service; (10) failing to utilize proper dispatch and information gathering techniques for crisis intervention, calls involving the mentally ill in crisis, calls from bilingual or non-English speaking citizens, or dispatching complete and accurate information to law

enforcement; and (11) failing to inform the City's police officers about Btesh's mental history or the history of calls for service to Btesh's residence, when they knew or should have known that Btesh was mentally handicapped. (*Id.* ¶¶ 145, 149.)

Even if all of these factual allegations are taken as true, it cannot be reasonably inferred that McEachern or Methias possessed an "evil intent or motive" or that their conduct was "much more reprehensible and unacceptable than mere intentional conduct." At most the alleged conduct amounts to ordinary or gross negligence, which does not remove the shield from tort liability under Section 768.28(9)(a). *Elliott*, 579 So. 2d at 831. Accordingly, Plaintiff cannot recover in tort from McEachern and Methias under the alleged facts, and the claims of negligence against McEachern and Methias in Counts X and XI should be dismissed.

## Conclusion

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion to Dismiss by Defendants Michelle McEachern and Jewel Methias (Doc. No. 3) be **GRANTED**. Counts X and XI of the Complaint are **DISMISSED without prejudice**. Plaintiff has leave to file an Amended Complaint that comports with this Order within fourteen (14) days from the date of this Order. If Plaintiff fails to timely submit an Amended Complaint, this action will proceed solely on the well-pled claims of the original Complaint.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on February 9, 2010.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record