**ALBERTO D. BTESH, as Guardian of
RONALD S. BTESH,**

           **Plaintiff,**

-vs-                                              Case No. 6:10-cv-71-Orl-19DAB

**CITY OF MAITLAND, FLORIDA, REBECCA
DENICOLA, AMANDA PAYNE, MICHELLE
McEACHERN, and JEWEL METHIAS,**

           **Defendants.**

___

# ORDER

This case comes before the Court on the following:

1. Motion to Dismiss the Complaint by Defendant Amanda Payne (Doc. No. 22, filed Feb. 8, 2010); and

2. Motion to Dismiss the Complaint by Defendant Rebecca Denicola (Doc. No. 25, filed Feb. 10, 2010).

## Background

### I. Plaintiff's Allegations[1]

This case is brought by Plaintiff Alberto D. Btesh as the guardian of Ronald S. Btesh ("Btesh"), a man who allegedly has the mental capacity of a nine year-old and suffers from a number of mental illnesses. (Doc. No. 2 ¶¶ 22, 24.) Plaintiff maintains that Btesh's mental illnesses were documented by four Maitland Police Department Incident Reports made prior to December 22,

---

[1] The facts presented in this Order are derived from the allegations of the Complaint. These facts are included only to provide context and should not be construed as findings of fact.

2008, the last of which was dated November 16, 2008. (*Id.*) During each of these four incidents, the City of Maitland ("City"), through its police department, allegedly communicated with Nohemy Castelblanco, Btesh's live-in caregiver, who speaks only Spanish. (*Id.* ¶ 23.) Plaintiff asserts that the City had access to these incident reports documenting Btesh's mental condition. (*Id.* ¶ 25.)

On December 22, 2008, Castelblanco allegedly called 911 to obtain emergency medical assistance for Btesh from the City. (*Id.* ¶ 26.) Plaintiff asserts that Michelle McEachern or Jewel Methias ("Operator"),[2] 911 operators acting as agents or employees of the City,[3] received Castelblanco's call. (*Id.* ¶¶ 16, 27, 31, 36.) Plaintiff further maintains that although Castelblanco told the Operator that Btesh "is crazy" and that "he attacked me," the Operator became frustrated with her inability to communicate with Castelblanco and abruptly concluded that a rape had occurred. (*Id.* ¶ 29.) Accordingly, the Operator categorized Castelblanco's call for emergency medical assistance as a "sexual battery in progress" and dispatched Officers Rebecca Denicola and Amanda Payne of the Maitland Police Department to Btesh's residence. (*Id.* ¶¶ 12, 14, 30, 31, 48.)

Plaintiff alleges that upon losing contact with the Operator, Castelblanco immediately contacted an English-speaking friend, Alida Ramirez, who called 911 to ensure that the City understood the nature of the Castelblanco's request for emergency medical assistance for Btesh. (*Id.* ¶ 32.) Ramirez allegedly told the Operator that Btesh "is mentally sick" and needs "to go to the

---

[2] It appears that Plaintiff does not know which of the two 911 operators took the alleged actions. (*See* Doc. No. 2 ¶¶ 27-48.) Accordingly, the Court will construe the pleadings to allege that McEachern or, alternatively, Methias received and dispatched the 911 calls at issue. Fed. R. Civ. P. 8(d)(3), (e).

[3] Plaintiff alleges that at all times material to this case, the cities of Maitland and Apopka had an Interlocal Agreement under which the City of Apopka was delegated the duty of operating, managing, controlling, dispatching, and communicating all emergency 911 calls made from the City of Maitland. (Doc. No. 2 ¶ 7.) This factual allegation does not affect the legal analysis and result reached by the Court on the instant Motion.

hospital." (*Id.* ¶ 34.) Plaintiff asserts that the Operator maintained a dismissive tone with Ramirez, ignored Ramirez's request for emergency medical services, and continued to erroneously conclude that a sexual battery had occurred. (*Id.* ¶ 35.) Further, Plaintiff contends that the Operator inserted the issue of rape into both 911 calls. (*Id.* ¶ 38.) Plaintiff also maintains that the Operator failed to dispatch updated, accurate, or additional information to the employees of the City who responded to the scene, including Officers Denicola and Payne. (*Id.* ¶ 36.)

Plaintiff alleges that the Operator and Officers Denicola and Payne had access to a database containing information about prior calls for emergency services at Btesh's home and thus knew or should have known about Btesh's mental illnesses and his history of involuntary Baker Act proceedings. (*Id.* ¶¶ 39-44.) In addition, Plaintiff asserts that the Operator knew or should have known from the 911 records that Castelblanco spoke only Spanish because such records showed that on November 16, 2008, a 911 operator requested the assistance of a Spanish-speaking operator to handle Castelblanco's call requesting emergency medical services for Btesh. (*Id.* ¶¶ 46-47.) Plaintiff maintains that the Operator should have requested a Spanish-speaking 911 operator to handle Castelblanco's call on December 22, 2008. (*Id.* ¶ 47.)

Plaintiff alleges that Officers Denicola and Payne were not trained to respond to calls for service regarding the mentally ill, were not Crisis Intervention Team trained,[4] and were not "sworn officers specially trained and designated to handle situations involving the mentally ill in crisis." (*Id.* ¶ 49.) Denicola and Payne allegedly had been employed by the City as police officers for three years and eighteen months, respectively. (*Id.* ¶¶ 50-51.) Plaintiff maintains that by dispatching

---

[4] Crisis Intervention Team training is allegedly a course used to educate the City's police officers on how to calm and contain situations to ensure public safety, including encounters with individuals suffering from mental illnesses. (Doc. No. 2 ¶ 52.)

Denicola and Payne to Btesh's residence, the Operator and the City violated Maitland Police Department Policy and Procedure Directive Number 705-2001, which states:

> It shall be the policy of the Maitland Police Department to participate in the Central Florida Crisis Intervention Team. Specially trained officers will respond to calls involving the mentally ill in crisis and explore alternatives to arrest when appropriate.

(*Id.* ¶ 54.) Plaintiff further maintains that Officers Denicola and Payne were not properly trained or capable of responding to a call involving rape, sexual assault, sexual battery, or any other forcible felony. (*Id.* ¶ 57.) Plaintiff asserts that if Denicola and Payne believed that they were responding to a rape, sexual assault, sexual battery, or other forcible felony, the applicable police procedures required them to recognize and control the situation presented to them and wait for additional officers to assist in securing the alleged victim and entering Btesh's residence. (*Id.* ¶ 58.)

When Officers Denicola and Payne arrived at Btesh's residence, Castelblanco was allegedly standing in the open doorway to the apartment and told Denicola and Payne that Btesh was mentally ill. (*Id.* ¶¶ 59-60.) Plaintiff maintains that Denicola and Payne entered Btesh's residence with their firearms drawn and knowingly allowed Castelblanco to accompany them inside the apartment. (*Id.* ¶ 61.) Plaintiff further alleges that once inside the apartment, Payne remained in the hallway while Denicola stepped into the living area. (*Id.* ¶ 62.) Payne and Denicola allegedly ordered Btesh to come out of his bedroom. (*Id.* ¶ 63.) Plaintiff asserts that Btesh complied and walked down the hallway toward Payne and Denicola with his hands plainly visible and empty of any weapons or objects. (*Id.* ¶¶ 64-66.) Plaintiff further maintains that as Payne and Denicola shouted orders to Btesh, they realized that Btesh was not in control of his faculties. (*Id.* ¶ 67.) As Btesh continued to walk down the hallway, Payne allegedly retreated outside the apartment while Denicola and Castelblanco remained inside. (*Id.* ¶¶ 68-69.) Btesh then locked the door to his apartment and

walked toward Denicola, who was near the kitchen area. (*Id.* ¶¶ 70, 72.) Plaintiff maintains that at this point, four minutes after arriving on the scene, Denicola fired three 9mm bullets into the body of Btesh. (*Id.* ¶¶ 73-74.) Plaintiff asserts that as a result of the aforementioned events, Btesh suffered damages, including, but not limited to, bodily injury, aggravation of preexisting mental injuries, medical expenses, and property damage. (*Id.* ¶ 76.)

## II. Procedural History

On February 17, 2009, Plaintiff sent a Notice of Tort Claims to the City. (Doc. No. 2-8.) On November 13, 2009, Plaintiff filed a twenty-count complaint against the City, Rebecca Denicola, Amanda Payne, Michelle McEachern, and Jewell Methias in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida. (Doc. No. 2.) On January 12, 2010, the City removed the case to this Court. (Doc. No. 1.) Defendants Payne and Denicola filed Motions to Dismiss the Complaint on February 10 and 12, 2010, respectively. (Doc. Nos. 22, 25.) As of the date of this Order, Plaintiff has not filed a response to either of the Motions to Dismiss.

**Standard of Review**

## I. Motion to Dismiss

In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## Analysis

**I. Counts XV and XVI: Fourteenth Amendment Excessive Force Claims**

Plaintiff asserts that Defendants Denicola and Payne applied excessive force to Btesh in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 in Counts XV and XVI. (Doc. No. 2 at 42-44.) Denicola and Payne argue that those claims should be dismissed because they are factually duplicative of the Section 1983 claims of excessive force in violation of the Fourth Amendment in Counts III and IV and because Plaintiff's claims of excessive force properly arise under the Fourth Amendment. (Doc. No. 22 at 10-11; Doc. No. 25 at 8-9.)

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court clarified that a Section 1983 claim alleging the use of excessive force by a police officer during a seizure is analyzed under the Fourth Amendment, not the Fourteenth Amendment:

> Today we make explicit . . . and hold that all claims that law enforcement officers have used excessive force - deadly or not - in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Id.* at 395; *see also Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009); *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009); *Garrett v. Athens-Clarke County, Ga.*, 378 F.3d 1274, 1279 (11th Cir. 2004).

Plaintiff asserts factually identical Section 1983 claims of excessive force against Denicola in Counts III and XV and against Payne in Counts IV and XVI. (*Compare* Doc. No. 2 at 23-25, *with id.* at 42-44.) The only difference between these claims is that Plaintiff alleges a violation of the Fourth Amendment in Counts III and IV and a violation of the Fourteenth Amendment in Counts XV and XVI. Further, Plaintiff does not allege any unlawful conduct in Counts XV and XVI other than excessive force by Denicola and Payne. Thus, in light of the binding precedent set forth above in *Graham* and in the absence of any argument by Plaintiff to the contrary,[5] Plaintiff's Fourteenth Amendment excessive force claims against Denicola and Payne in Counts XV and XVI should be dismissed.

---

[5] Pursuant to Local Rule 3.01(b), each party opposing a motion shall file a response with fourteen (14) days after service of the motion. Failure to oppose a motion raises an inference that the party does not object to such motion. *E.g.*, *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355, 1371 (M.D. Fla. 2007).

## II. Counts III and IV: Official Capacity Allegations

Plaintiff asserts Section 1983 claims of excessive force against Denicola and Payne in both their individual capacities ("Individual Capacity Claims") and their official capacities as police officers of the City of Maitland ("Official Capacity Claims") in Counts III and IV. (*Id.* at 23-25.) Denicola and Payne maintain that the Official Capacity Claims should be dismissed because they are duplicative of Plaintiff's Section 1983 claims against the City of Maitland. (Doc. No. 22 at 8-9; Doc. No. 25 at 8.)

It is well settled that a Section 1983 claim against an officer, employee, or agent of a governmental entity in his or her official capacity is essentially a suit against the entity. *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997); *Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Cooper v. Dillon*, 403 F.3d 1208, 1221 n.8 (11th Cir. 2005); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). Thus, the Official Capacity Claims should be asserted against the City of Maitland, not Denicola and Payne. *Busby*, 931 F.2d at 776. On the other hand, the Individual Capacity Claims may subject Denicola and Payne to personal liability.[6] *Graham*, 473 U.S. at 165.

When identical Section 1983 claims are made against both a governmental entity and the entity's officers, employees, or agents in their official capacities, courts should dismiss the claim against the named individual defendants in their official capacities as "redundant and possibly confusing to the jury." *Busby*, 931 F.2d at 776; *see also Edison v. Florida*, No. 2:04-cv-157, 2007 WL 80831, at *2 (M.D. Fla. Jan. 8, 2007) (dismissing redundant Section 1983 claims with

---

[6] Because Defendants Denicola and Payne do not challenge the factual sufficiency of the claims against them in their individual capacities, the Court will not address that issue here.

prejudice); *Bailey v. Town of Lady Lake*, Fla., No. 5:05-cv-464, 2006 WL 2048250, at *3 (M.D. Fla. July 20, 2006) (same).

As stated above, Plaintiff alleges in the Official Capacity Claims that Denicola and Payne used excessive force in their official capacities as police officers of the City of Maitland. (*Id.* at 23-25.) Plaintiff asserts Section 1983 claims against the City of Maitland in Counts I, II, XIII, and XIV for the failure to train, supervise, and properly evaluate its police officers and 911 operators in violation of the Fourth and Fourteenth Amendments. (Doc. No. 2 at 17-23; 36-42.) Because Plaintiff alleges different facts and theories of liability in the Official Capacity Claims and the Section 1983 claims against the City of Maitland in Counts I, II, XIII, and XIV, the Official Capacity Claims are not duplicative of Plaintiff's Section 1983 claims against the City of Maitland in Counts I, II, XIII, and XIV. However, the allegations underlying the Official Capacity Claims are properly brought against the City of Maitland, not Denicola and Payne individually, *Busby*, 931 F.2d at 776, and thus the Official Capacity Claims should be dismissed without prejudice to reassertion against the City of Maitland.

**III. Counts XIX and XX: Section 1983 Claim for Violating the Florida Constitution**

Plaintiff asserts Section 1983 claims of excessive force in violation of Article I, Section 12 of the Florida Constitution against Denicola and Payne in Counts XIX and XX. (Doc. No. 2 at 51-54.) Denicola and Payne argue that these claims should be dismissed because a Section 1983 claim cannot be based on a violation of state law. (Doc. No. 22 at 11; Doc. No. 25 at 9.)

Section 1983 provides a remedy for deprivations of federal statutory and constitutional rights. *Almand v. DeKalb County, Ga.*, 103 F.3d 1510, 1512 (11th Cir. 1997). Thus, no relief can be granted on a Section 1983 claim alleging only a violation of state law. *Ensley v. Soper*, 142 F.3d

1402, 1407 n.4 (11th Cir. 1998). Because Plaintiff alleges Section 1983 claims arising from violations of Article I, Section 12 of the Florida Constitution, without more, in Counts XIX and XX, (Doc. No. 2 at 51-54), Plaintiff does not state a claim upon which relief can be granted in those counts. Accordingly, Counts XIX and XX should be dismissed.

## IV. Count IV: Excessive Force By Defendant Payne

Plaintiff asserts a Section 1983 claim for excessive force in violation of the Fourth Amendment against Payne in Count IV. (Doc. No. 2 at 24-25.) Payne maintains that she could not have used excessive force in violation of Btesh's Fourth Amendment rights under the alleged facts because she did shoot or touch Btesh. (Doc. No. 22 at 9.)

From the allegations of the complaint Payne did not shoot or touch Btesh. (Doc. No. 2 ¶¶ 68-74.) However, a police officer "who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force,[7] can be held liable for his nonfeasance" under Section 1983. *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007). For this principle to apply, the non-intervening officer must have been in a position to intervene, yet failed to do so. *Hadley v. Guiterrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008). In *Hadley*, the Eleventh Circuit held that the non-intervening officer should have received qualified immunity because the plaintiff "presented no evidence from which a reasonable jury could find that [the non-intervening officer] could have anticipated and then stopped [the intervening officer] from punching [the plaintiff] once in the stomach." *Id.* at 1331. Thus, to properly state a claim for

---

[7] For a non-intervening officer to be liable for excessive force, the intervening officer must have used excessive force. *Crenshaw*, 556 F.3d at 1294. Thus, in discussing whether Plaintiff states a claim for the use of excessive force against Payne, the Court looks to the facts that Plaintiff pleads in the Complaint which plausibly establish that Denicola used excessive force by shooting Btesh three times under the alleged circumstances.

excessive force against Payne, Plaintiff must allege facts in the Complaint plausibly establishing that Payne was in a position where she could have anticipated and stopped Denicola from shooting Btesh.

Plaintiff alleges that Payne had retreated outside Btesh's apartment and that Btesh had locked the door to his apartment when Denicola shot Btesh three times. (Doc. No. 2 ¶¶ 68-74.) These allegations, without more, place Payne in a position where she could not have observed, let alone stopped, the alleged excessive force by Denicola. *See Ensley*, 142 F.3d at 1408 (holding that an officer who was engaged in arresting a suspect and who did not observe his fellow officer's use of excessive force on a second suspect did not have a duty to intervene); *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996) (same). Further, Plaintiff does not allege any facts from which it may be plausibly inferred that Payne improperly retreated from Btesh's apartment prior to the shooting and that if she had remained in the apartment, she could have anticipated and stopped Denicola from shooting Btesh. In light of the foregoing, and absent any argument by Plaintiff to the contrary, Plaintiff's Section 1983 claim of excessive force against Payne in Count IV should be dismissed.

## V. Count VII: Battery By Defendant Payne

Plaintiff asserts a claim of battery against Payne in Count VII. (Doc. No. 2 at 27-28.) Payne argues that this claim should be dismissed because Plaintiff does not allege that Payne touched Btesh. (Doc. No. 22 at 9-10.)

Under Florida law, battery "consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005). In order to subject a defendant to liability for a battery, "the act of the defendant must cause and be intended to cause an unpermitted

contact." *City of Winter Haven v. Allen*, 541 So. 2d 128, 138 (Fla. 2d DCA 1989) (citing W.L. Prosser, *The Law of Torts* 35 (4th ed. 1971)). In addition, a defendant may be liable for a battery committed by another person under the "concert of action" theory, which states that:

> [a]ll those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify or adopt his acts done for their benefit, are equally liable with him.

*Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1556 (S.D. Fla. 1996) (quoting *Ray v. Cutter Labs.*, 744 F. Supp. 1124, 1127 (M.D. Fla. 1990)); *see also Symmes v. Prairie Pebble Phosphate Co.*, 63 So. 1, 3 (Fla. 1913) (recognizing the "concert of action" theory for joint tort liability).

Plaintiff does not allege that Payne made contact with or touched Btesh in any way. Further, Plaintiff does not allege facts from which it may be plausibly inferred that Denicola and Payne acted "in pursuance of a common plan or design" to batter Btesh such that Payne could be liable under the "concert of action" theory. Accordingly, Plaintiff does not state a claim of battery against Payne upon which relief can be granted, and Count VII, and Count VII should be dismissed.

**Conclusion**

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Motions to Dismiss the Complaint by Defendant Amanda Payne (Doc. No. 22) and by Defendant Rebecca Denicola (Doc. No. 25) are **GRANTED in part** and **DENIED in part** as follows:

1. Counts IV, VII, XV, XVI, XIX, and XX of the Complaint are **DISMISSED without prejudice**;

2. The Official Capacity Claim in Count III is **DISMISSED without prejudice** to reassertion against the City of Maitland; and

2. The Motions to Dismiss are **DENIED** in all other respects.

Plaintiff has leave to file an Amended Complaint that comports with this Order within fourteen (14) days from the date of this Order. If Plaintiff fails to timely submit an Amended Complaint, this action will proceed solely on the well-pled claims of the original Complaint.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 5, 2010.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record