UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALBERTO D. BTESH, as Guardian of
RONALD S. BTESH,

      Plaintiff,

-vs-                Case No. 6:10-cv-71-Orl-19DAB

CITY OF MAITLAND, FLORIDA, REBECCA
DENICOLA, AMANDA PAYNE, MICHELLE
McEACHERN, and JEWEL METHIAS,

      Defendants.

# ORDER

This case comes before the Court on the Motion to Dismiss the Complaint by Defendant City of Maitland. (Doc. No. 29, filed Mar. 4, 2010.)

**Background**

**I. Plaintiff's Allegations**[1]

This case is brought by Plaintiff Alberto D. Btesh as the guardian of Ronald S. Btesh ("Btesh"), a man who allegedly has the mental capacity of a nine year-old and suffers from a number of mental illnesses. (Doc. No. 2 ¶¶ 22, 24.) Plaintiff maintains that Btesh's mental illnesses were documented by four Maitland Police Department Incident Reports made prior to December 22, 2008, the last of which was dated November 16, 2008. (*Id.*) During each of these four incidents, the City of Maitland ("City"), through its police department, allegedly communicated with Nohemy

---

[1] The facts presented in this Order are derived from the allegations of the Complaint. These facts are included only to provide context and should not be construed as findings of fact.

Castelblanco, Btesh's live-in caregiver, who speaks only Spanish. (*Id.* ¶ 23.) Plaintiff asserts that the City had access to these incident reports documenting Btesh's mental condition. (*Id.* ¶ 25.)

On December 22, 2008, Castelblanco allegedly called 911 to obtain emergency medical assistance for Btesh from the City. (*Id.* ¶ 26.) Plaintiff asserts that Michelle McEachern or Jewel Methias ("Operator"),[2] 911 operators acting as agents or employees of the City,[3] received Castelblanco's call. (*Id.* ¶¶ 16, 27, 31, 36.) Plaintiff further maintains that although Castelblanco told the Operator that Btesh "is crazy" and that "he attacked me," the Operator became frustrated with her inability to communicate with Castelblanco and abruptly concluded that a rape had occurred. (*Id.* ¶ 29.) Accordingly, the Operator categorized Castelblanco's call for emergency medical assistance as a "sexual battery in progress" and dispatched Officers Rebecca Denicola and Amanda Payne of the Maitland Police Department to Btesh's residence. (*Id.* ¶¶ 12, 14, 30, 31, 48.)

Plaintiff alleges that upon losing contact with the Operator, Castelblanco immediately contacted an English-speaking friend, Alida Ramirez, who called 911 to ensure that the City understood the nature of the Castelblanco's request for emergency medical assistance for Btesh. (*Id.* ¶ 32.) Ramirez allegedly told the Operator that Btesh "is mentally sick" and needs "to go to the

---

[2] It appears that Plaintiff does not know which of the two 911 operators took the alleged actions. (*See* Doc. No. 2 ¶¶ 27-48.) Accordingly, the Court will construe the pleadings to allege that McEachern or, alternatively, Methias received and dispatched the 911 calls at issue. Fed. R. Civ. P. 8(d)(3), (e).

[3] Plaintiff alleges that at all times material to this case, the cities of Maitland and Apopka had an Interlocal Agreement under which the City of Apopka was delegated the duty of operating, managing, controlling, dispatching, and communicating all emergency 911 calls made from the City of Maitland ("Maitland-Apopka Interlocal Agreement"). (Doc. No. 2 ¶ 7.) A copy of the Maitland-Apopka Interlocal Agreement is attached to the Complaint. (Doc. No. 2-1 at 19-26.) Plaintiff also attaches to the Complaint a copy of an agreement entitled Orange County Interlocal Agreement, Risk Management and Self-Insurance ("Orange County Interlocal Agreement"). (Doc. No. 2-1 at 2-18.) It is unclear at this stage of the proceedings how the Orange County Interlocal Agreement is related to the Maitland-Apopka Interlocal Agreement, if at all.

hospital." (*Id.* ¶ 34.) Plaintiff asserts that the Operator maintained a dismissive tone with Ramirez, ignored Ramirez's request for emergency medical services, and continued to erroneously conclude that a sexual battery had occurred. (*Id.* ¶ 35.) Further, Plaintiff contends that the Operator inserted the issue of rape into both 911 calls. (*Id.* ¶ 38.) Plaintiff also maintains that the Operator failed to dispatch updated, accurate, or additional information to the employees of the City who responded to the scene, including Officers Denicola and Payne. (*Id.* ¶ 36.)

Plaintiff alleges that the Operator and Officers Denicola and Payne had access to a database containing information about prior calls for emergency services at Btesh's home and thus knew or should have known about Btesh's mental illnesses and his history of involuntary Baker Act proceedings. (*Id.* ¶¶ 39-44.) In addition, Plaintiff asserts that the Operator knew or should have known from the 911 records that Castelblanco spoke only Spanish because such records showed that on November 16, 2008, a 911 operator requested the assistance of a Spanish-speaking operator to handle Castelblanco's call requesting emergency medical services for Btesh. (*Id.* ¶¶ 46-47.) Plaintiff maintains that the Operator should have requested a Spanish-speaking 911 operator to handle Castelblanco's call on December 22, 2008. (*Id.* ¶ 47.)

Plaintiff alleges that Officers Denicola and Payne were not trained to respond to calls for service regarding the mentally ill, were not Crisis Intervention Team trained,[4] and were not "sworn officers specially trained and designated to handle situations involving the mentally ill in crisis." (*Id.* ¶ 49.) Denicola and Payne allegedly had been employed by the City as police officers for three years and for eighteen months, respectively. (*Id.* ¶¶ 50-51.) Plaintiff maintains that by dispatching

---

[4] Crisis Intervention Team training is allegedly a course used to educate the City's police officers on how to calm and contain situations to ensure public safety, including encounters with individuals suffering from mental illnesses. (Doc. No. 2 ¶ 52.)

Denicola and Payne to Btesh's residence, the Operator and the City violated Maitland Police Department Policy and Procedure Directive Number 705-2001, which states:

> It shall be the policy of the Maitland Police Department to participate in the Central Florida Crisis Intervention Team. Specially trained officers will respond to calls involving the mentally ill in crisis and explore alternatives to arrest when appropriate.

(*Id.* ¶ 54.) Plaintiff further maintains that Officers Denicola and Payne were not properly trained or capable of responding to a call involving rape, sexual assault, sexual battery, or any other forcible felony. (*Id.* ¶ 57.) Plaintiff asserts that if Denicola and Payne believed that they were responding to a rape, sexual assault, sexual battery, or other forcible felony, the applicable police procedures required them to recognize and control the situation presented to them and wait for additional officers to assist in securing the alleged victim and entering Btesh's residence. (*Id.* ¶ 58.)

When Officers Denicola and Payne arrived at Btesh's residence, Castelblanco was allegedly standing in the open doorway to the apartment and told Denicola and Payne that Btesh was mentally ill. (*Id.* ¶¶ 59-60.) Plaintiff maintains that Denicola and Payne entered Btesh's residence with their firearms drawn and knowingly allowed Castelblanco to accompany them inside the apartment. (*Id.* ¶ 61.) Plaintiff further alleges that once inside the apartment, Payne remained in the hallway while Denicola stepped into the living area. (*Id.* ¶ 62.) Payne and Denicola allegedly ordered Btesh to come out of his bedroom. (*Id.* ¶ 63.) Plaintiff asserts that Btesh complied and walked down the hallway toward Payne and Denicola with his hands plainly visible and empty of any weapons or objects. (*Id.* ¶¶ 64-66.) Plaintiff further maintains that as Payne and Denicola shouted orders to Btesh, they realized that Btesh was not in control of his faculties. (*Id.* ¶ 67.) As Btesh continued to walk down the hallway, Payne allegedly retreated outside the apartment while Denicola and Castelblanco remained inside. (*Id.* ¶¶ 68-69.) Btesh then locked the door to his apartment and

walked toward Denicola, who was near the kitchen area. (*Id.* ¶¶ 70, 72.) Plaintiff maintains that at this point, four minutes after arriving on the scene, Denicola fired three 9mm bullets into the body of Btesh. (*Id.* ¶¶ 73-74.) Plaintiff asserts that as a result of the aforementioned events, Btesh suffered damages, including, but not limited to, bodily injury, aggravation of preexisting mental injuries, medical expenses, and property damage. (*Id.* ¶ 76.)

### II. Procedural History

On February 17, 2009, Plaintiff sent a Notice of Tort Claims to the City. (Doc. No. 2-8.) On November 13, 2009, Plaintiff filed a twenty-count complaint against the City, Rebecca Denicola, Amanda Payne, Michelle McEachern, and Jewell Methias in the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida. (Doc. No. 2.) On January 12, 2010, the City removed the case to this Court. (Doc. No. 1.) On March 4, 2010, the City filed a Motion to Dismiss Counts XII, XVII, and XVIII of the Complaint. (Doc. No. 29.) As of the date of this Order, Plaintiff has not filed a response to this Motion.

### Standard of Review

### I. Motion to Dismiss

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that

a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

**Analysis**

**I. Count XII: Breach of Contract**

In Count XII, Plaintiff asserts that Btesh is a third-party beneficiary to the Maitland-Apopka Interlocal Agreement and that the City is liable to Btesh for breaching that Agreement. (Doc. No.

2 at 35-36.) The City argues that because the Orange County Interlocal Agreement expressly disclaims any third-party beneficiaries, Plaintiff's claim for breach of contract in Count XII should be dismissed. (Doc. No. 29 at 3-4.)

The Orange County Interlocal Agreement is attached to the Complaint, and Paragraph 9.5 of that Agreement states as follows:

> This Agreement is solely for the benefit of the Participants, and no right or cause of action shall accrue upon or by reason thereof, to or for the benefit of any third party. Nothing in this Agreement, either express or implied, is intended or shall be construed to confer upon or give any person, corporation, or governmental entity or agency, other than the parties hereto, any right, remedy, or claim under or by reason of this Agreement.

(Doc. No. 2-1 at 17.) The City does not cite, and the Court has not found, any allegations in the Complaint or documents attached to the Complaint showing that Paragraph 9.5 of the Orange County Interlocal Agreement applies to the Maitland-Apopka Interlocal Agreement such that the City could not be liable to Btesh for breaching the Maitland-Apopka Interlocal Agreement. Rather, at this stage of the proceedings, the Maitland-Apopka Interlocal Agreement and the Orange County Interlocal Agreement appear to be unrelated. Therefore, Plaintiff's claim for breach of contract in Count XII should not be dismissed at this time.[5]

**II. Counts XVII and XVIII: Section 1983 Claims for Violating the Florida Constitution**

Plaintiff asserts claims under 42 U.S.C. § 1983 for excessive force in violation of Article I, Section 12 of the Florida Constitution against the City in Counts XVII and XVIII. (Doc. No. 2 at

---

[5] The City does not argue that Plaintiff has failed to allege facts plausibly establishing a claim by a third-party beneficiary for breach of contract. Therefore, the Court need not discuss that issue here.

44-51.) The City argues that these claims should be dismissed because a Section 1983 claim cannot be based on a violation of state law. (Doc. No. 22 at 11; Doc. No. 25 at 9.)

Section 1983 provides a remedy for deprivations of federal statutory and constitutional rights. *Almand v. DeKalb County, Ga.*, 103 F.3d 1510, 1512 (11th Cir. 1997). Thus, no relief can be granted on a Section 1983 claim alleging only a violation of state law. *Ensley v. Soper*, 142 F.3d 1402, 1407 n.4 (11th Cir. 1998). Because Plaintiff alleges Section 1983 claims arising from violations of Article I, Section 12 of the Florida Constitution, without more, in Counts XVII and XVIII, (Doc. No. 2 at 44-51), Plaintiff does not state a claim upon which relief can be granted in those counts. Accordingly, Counts XVII and XVIII should be dismissed.

## Conclusion

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion to Dismiss the Complaint by Defendant City of Maitland (Doc. No. 29) is **GRANTED in part** and **DENIED in part**. Counts XVII and XVIII of the Complaint are **DISMISSED without prejudice**. The Motion to Dismiss is **DENIED** in all other respects.

Plaintiff has leave to file an Amended Complaint that comports with this Order within fourteen (14) days from the date of filing of this Order. If Plaintiff fails to timely submit an Amended Complaint, this action will proceed solely on the well-pled claims of the original Complaint.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on March 28, 2010.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record