UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ALBERTO D. BTESH, as Guardian of
RONALD S. BTESH,**

      **Plaintiff,**

-vs-                   Case No. 6:10-cv-71-Orl-19DAB

**CITY OF MAITLAND, FLORIDA, REBECCA
DENICOLA, and AMANDA PAYNE,**

      **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion to Dismiss Amended Complaint by Defendant Amanda Payne (Doc. No. 41, filed Apr. 30, 2010); and

2. Response to Defendant Amanda Payne's Motion to Dismiss Amended Complaint by Plaintiff Alberto D. Btesh (Doc. No. 44, filed May 10, 2010).

**Background**

**I. Plaintiff's Allegations**[1]

This case is brought by Plaintiff Alberto D. Btesh as the guardian of Ronald S. Btesh ("Btesh"), a man who allegedly has the mental capacity of a nine year-old and suffers from a number of mental illnesses. (Doc. No. 39 ¶¶ 22, 24.) Plaintiff maintains that Btesh's mental illnesses were documented by four Maitland Police Department Incident Reports made prior to December 22,

---

[1] The facts presented in this Order are derived from the allegations of the Amended Complaint. These facts are included only to provide context and should not be construed as findings of fact.

2008, the last of which was dated November 16, 2008. (*Id.* ¶ 24.) During each of these four incidents, the City of Maitland ("City"), through its police department, allegedly communicated with Nohemy Castelblanco, Btesh's live-in caregiver, who speaks only Spanish. (*Id.* ¶ 23.) Plaintiff asserts that the City had access to these incident reports documenting Btesh's mental condition. (*Id.* ¶ 25.)

On December 22, 2008, Castelblanco allegedly called 911 to obtain emergency medical assistance for Btesh from the City. (*Id.* ¶ 26.) Plaintiff asserts that Michelle McEachern, a 911 operator for the City, received Castelblanco's call and reported a "sexual battery in progress." (*Id.* ¶¶ 16, 27-30.) Officers Rebecca Denicola and Amanda Payne of the Maitland Police Department were allegedly dispatched to Btesh's residence. (*Id.* ¶¶ 12, 14, 30, 31.) Plaintiff maintains that McEachern and Officers Denicola and Payne had access to a database containing information about prior calls for emergency services at Btesh's home and thus knew or should have known about Btesh's mental illnesses and history of involuntary Baker Act proceedings. (*Id.* ¶¶ 39-44.)

When Officers Denicola and Payne arrived at Btesh's residence, Castelblanco was allegedly standing in the open doorway to the apartment and told Denicola and Payne that Btesh was mentally ill. (*Id.* ¶¶ 59-60.) Plaintiff maintains that Denicola and Payne entered Btesh's residence "with their firearms drawn ready and expecting to use deadly force." (*Id.* ¶ 61.) Plaintiff further asserts that once inside the apartment, Payne remained in the hallway while Denicola stepped into the living area. (*Id.* ¶ 62.) Payne and Denicola allegedly ordered Btesh to come out of his bedroom. (*Id.* ¶ 63.) Plaintiff contends that Btesh complied and walked down the hallway toward Payne and Denicola with his hands plainly visible and empty of any weapons or objects. (*Id.* ¶¶ 64-66.) Plaintiff further maintains that as Payne and Denicola shouted orders to Btesh, they realized that he

was not in control of his faculties and was unable to comply with their commands. (*Id.* ¶ 67.) Plaintiff also contends that Denicola and Payne shouted at each other from different rooms of the apartment and became excited and argumentative. (*Id.* ¶¶ 62, 69.) Plaintiff maintains that four minutes after arriving on the scene, Denicola panicked and fired three 9mm bullets into the body of Btesh, even though Btesh had not threatened, attacked, or approached Payne or Denicola. (*Id.* ¶¶ 68, 70.) Payne allegedly took no action to prevent Denicola from shooting Btesh. (*Id.* ¶ 73.) Plaintiff asserts that as a result of the aforementioned events, Btesh suffered damages, including, but not limited to, bodily injury, aggravation of preexisting mental injuries, medical expenses, and property damage. (*Id.* ¶ 74.)

Plaintiff maintains that Denicola and Payne "concocted a scheme designed to cover-up and conceal" the shooting of Btesh by claiming that Btesh forced Payne outside the apartment and locked the front door prior to the shooting. (*Id.* ¶ 75.) In addition, Denicola and Payne allegedly altered the front door of the apartment to make it appear that Payne had kicked in the door. (*Id.*)

**II. Procedural History**

On November 13, 2009, Plaintiff filed a twenty-count Complaint in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida. (Doc. No. 39.) On January 12, 2010, the City removed the case to this Court. (Doc. No. 1.) On April 26, 2010, Plaintiff filed a twelve-count Amended Complaint against the City, Denicola, and Payne. (Doc. No. 39.) On April 30, 2010, Payne moved to dismiss Counts IV and VII of the Amended Complaint. (Doc. No. 41.) Plaintiff timely filed a response in opposition. (Doc. No. 44.)

**Standard of Review**

**I. Motion to Dismiss**

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint

pleads facts that are merely consistent with a defendant's liability, it stops short of
the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## Analysis

**I. Count IV: Excessive Force by Defendant Payne**

Plaintiff asserts a claim under 42 U.S.C. § 1983 for excessive force in violation of the Fourth Amendment against Payne in Count IV of the Amended Complaint. (Doc. No. 39 at 25-26.) Payne maintains that she did not use excessive force under the alleged facts because she did shoot or touch Btesh. (Doc. No. 41 at 8.)

From the allegations of the Amended Complaint, Payne did not shoot or touch Btesh. (Doc. No. 39 ¶¶ 59-75.) However, a police officer "who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force[2] can be held liable for his nonfeasance" under Section 1983. *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (11th Cir. 2007). For this principle to apply, the non-intervening officer must have been in a position to intervene yet have failed to do so. *Hadley v. Guiterrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008). In *Hadley*, the Eleventh Circuit held that the non-intervening officer should have received qualified immunity because the plaintiff "presented no evidence from which a reasonable jury could find that [the non-intervening officer] could have anticipated and then stopped [the acting officer] from

---

[2] Payne does not challenge the sufficiency of Plaintiff's allegations that Denicola used excessive force by shooting Btesh.

punching [the plaintiff] once in the stomach." *Id.* at 1331. Thus, to properly state a claim for excessive force against Payne, Plaintiff must allege facts plausibly establishing that Payne was in a position where she could have anticipated and stopped Denicola from shooting Btesh.

Denicola and Payne allegedly became excited and argumentative while shouting at each other in Btesh's apartment, and Denicola allegedly shot Btesh while panicked. (Doc. No. 39 ¶¶ 62, 69-70.) Plaintiff asserts that Payne took no action to prevent Denicola from shooting Btesh, although she was in a position to do so. (*Id.* ¶ 73.) These allegations plausibly establish that Payne failed to take reasonable steps to prevent the shooting of Btesh. *See Dukes v. Miami-Dade County*, 232 F. App'x 907, 912 (11th Cir. 2007) (finding a well-pled Section 1983 excessive force claim against non-intervening officers where the plaintiff alleged that each of the non-intervening officers "was in the vicinity of the attacks and capable of intervening to prevent the use of unnecessary force"). Therefore, Plaintiff's Section 1983 excessive force claim against Payne is well-pled.

## II. Count VII: Battery by Defendant Payne

Plaintiff asserts a claim of battery against Payne in Count VII of the Amended Complaint. (Doc. No. 39 at 28-29.) Payne argues that this claim should be dismissed because Plaintiff does not allege that Payne touched Btesh. (Doc. No. 392 at 9-10.)

Under Florida law, battery "consists of the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. 5th DCA 2005). In order to subject a defendant to liability for a battery, "the act of the defendant must cause and be intended to cause an unpermitted contact." *City of Winter Haven v. Allen*, 541 So. 2d 128, 138 (Fla. 2d DCA 1989) (citing W.L.

Prosser, *The Law of Torts* 35 (4th ed. 1971)).  In addition, a defendant may be liable for a battery committed by another person under the "concert of action" theory, which states that:

> [a]ll those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify or adopt his acts done for their benefit, are equally liable with him.

*Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1556 (S.D. Fla. 1996) (quoting *Ray v. Cutter Labs.*, 744 F. Supp. 1124, 1127 (M.D. Fla. 1990)); *see also Symmes v. Prairie Pebble Phosphate Co.*, 63 So. 1, 3 (Fla. 1913) (recognizing the "concert of action" theory for joint tort liability).

Plaintiff does not allege that Payne made contact with or touched Btesh in any way. Although Denicola and Payne allegedly entered Btesh's apartment "with their firearms drawn ready and expecting to administer deadly force" and "concocted a scheme designed to cover-up and conceal" the shooting of Btesh, (Doc. No. 39 ¶¶ 61, 75), Plaintiff does not plead facts plausibly establishing that Denicola and Payne acted "in pursuance of a common plan or design" to shoot Btesh. *Vernon*, 912 F. Supp. at 1556.  Accordingly, the battery claim against Payne in Count VII should be dismissed.

## Conclusion

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion to Dismiss Amended Complaint by Defendant Amanda Payne (Doc. No. 41) is **GRANTED in part and DENIED in part**.  Count VII of the Amended Complaint is **DISMISSED without prejudice**.  The Motion to Dismiss is **DENIED** in all other respects.

Plaintiff has leave to file a Second Amended Complaint that comports with this Order within fourteen (14) days from the date of filing of this Order.  If Plaintiff fails to timely submit a Second

Amended Complaint, this action will proceed solely on the well-pled claims of the Amended Complaint.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on June 1, 2010.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record