UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALBERTO D. BTESH, as Guardian of
RONALD S. BTESH,

            Plaintiff,

-vs-                                              Case No. 6:10-cv-71-Orl-19DAB

CITY OF MAITLAND, FLORIDA, REBECCA
DENICOLA, and AMANDA PAYNE,

            Defendants.
_____

# ORDER

This case comes before the Court on the following:

1. Motion to Dismiss Amended Complaint by Defendant City of Maitland (Doc. No. 48, filed June 8, 2010); and

2. Response to Defendant City of Maitland's Motion to Dismiss Amended Complaint by Plaintiff Alberto D. Btesh (Doc. No. 51, filed June 21, 2010).

## Background

### I. Plaintiff's Allegations[1]

This case is brought by Plaintiff Alberto D. Btesh as the guardian of Ronald S. Btesh ("Btesh"), a man who allegedly has the mental capacity of a nine year-old and suffers from a number of mental illnesses. (Doc. No. 39 ¶¶ 22, 24.) Plaintiff maintains that Btesh's mental illnesses were documented by four Maitland Police Department Incident Reports made prior to December 22,

---

[1] The facts presented in this Order are derived from the allegations of the Amended Complaint. These facts are included only to provide context and should not be construed as findings of fact.

2008, the last of which was dated November 16, 2008. (*Id.* ¶ 24.) During each of these four incidents, the City of Maitland, through its police department, allegedly communicated with Nohemy Castelblanco, Btesh's live-in caregiver who speaks only Spanish. (*Id.* ¶ 23.) Plaintiff asserts that the City of Maitland had access to these incident reports documenting Btesh's mental condition. (*Id.* ¶ 25.)

On December 22, 2008, Castelblanco allegedly called 911 to obtain emergency medical assistance for Btesh from the City of Maitland. (*Id.* ¶ 26.) Plaintiff asserts that Michelle McEachern, a 911 operator,[2] received Castelblanco's call. (*Id.* ¶¶ 16, 27.) Plaintiff further maintains that although Castelblanco told McEachern that Btesh "is crazy" and that "he attacked me," McEachern became frustrated with her inability to communicate with Castelblanco and abruptly concluded that a rape had occurred. (*Id.* ¶¶ 28-29.) McEachern allegedly categorized Castelblanco's call for emergency medical assistance as a "sexual battery." (*Id.* ¶ 30.) Plaintiff asserts that McEachern "and / or" Jewel Methias, another 911 operator, dispatched Officers Rebecca Denicola and Amanda Payne of the Maitland Police Department to Btesh's residence. (Doc. No. 39 ¶¶ 12-15, 18-19, 31.)

Plaintiff contends that upon losing contact with McEachern, Castelblanco immediately contacted an English-speaking friend, Alida Ramirez, who called 911 to ensure that Castelblanco's request for emergency medical assistance for Btesh was understood. (*Id.* ¶ 32.) Ramirez allegedly told McEachern that Btesh "is mentally sick" and needs "to go to the hospital." (*Id.* ¶ 34.) Plaintiff

---

[2] Plaintiff alleges that at all times material to this case, the cities of Maitland and Apopka had an Interlocal Agreement under which the City of Apopka was delegated the duty of operating, managing, controlling, dispatching, and communicating all emergency 911 calls made from the City of Maitland ("Interlocal Agreement"). (Doc. No. 39 ¶ 7.) A copy of the Interlocal Agreement is incorporated by reference into the Amended Complaint. (*Id.*)

asserts that McEachern maintained a dismissive tone with Ramirez, ignored Ramirez's request for emergency medical services, and continued to erroneously conclude that a sexual battery had occurred. (*Id.* ¶ 35.) Further, Plaintiff contends that McEachern inserted the issue of rape into both 911 calls. (*Id.* ¶ 38.) Plaintiff also maintains that McEachern "and / or" Methias failed to dispatch updated, accurate, or additional information to Officers Denicola and Payne. (*Id.* ¶ 36.)

Plaintiff alleges that McEachern and Officers Denicola and Payne had access to a database containing information about prior calls for emergency services at Btesh's home and thus knew or should have known about Btesh's mental illnesses and his history of involuntary Baker Act proceedings. (*Id.* ¶¶ 39-44.) In addition, Plaintiff asserts that McEachern knew or should have known from the 911 records that Castelblanco spoke only Spanish because such records showed that on November 16, 2008, a 911 operator requested the assistance of a Spanish-speaking operator to handle Castelblanco's call requesting emergency medical services for Btesh. (*Id.* ¶¶ 46-47.) Plaintiff maintains that McEachern should have requested a Spanish-speaking 911 operator to handle Castelblanco's call on December 22, 2008. (*Id.* ¶ 47.)

Plaintiff alleges that Officers Denicola and Payne were not trained to respond to calls for service regarding the mentally ill, were not Crisis Intervention Team trained,[3] and were not "sworn officers specially trained and designated to handle situations involving the mentally ill in crisis." (*Id.* ¶ 49.) Denicola and Payne allegedly had been employed by the City of Maitland as police officers for three years and eighteen months, respectively. (*Id.* ¶¶ 50-51.) Plaintiff maintains that by dispatching Denicola and Payne to Btesh's residence, the Operator and the City of Maitland

---

[3] Crisis Intervention Team training is allegedly a course used to educate police officers on how to calm and contain situations to ensure public safety, including encounters with individuals suffering from mental illnesses. (Doc. No. 39 ¶ 52.)

violated Maitland Police Department Policy and Procedure Directive Number 705-2001, which states:

> It shall be the policy of the Maitland Police Department to participate in the Central Florida Crisis Intervention Team. Specially trained officers will respond to calls involving the mentally ill in crisis and explore alternatives to arrest when appropriate.

(*Id.* ¶ 54.) Plaintiff further maintains that Officers Denicola and Payne were not properly trained or capable of responding to a call involving rape, sexual assault, sexual battery, or any other forcible felony. (*Id.* ¶ 57.) Plaintiff asserts that if Denicola and Payne believed that they were responding to a rape, sexual assault, sexual battery, or other forcible felony, the applicable police procedures required them to recognize and control the situation presented to them and wait for additional officers to assist in securing the alleged victim and entering Btesh's residence. (*Id.* ¶ 58.)

When Officers Denicola and Payne arrived at Btesh's residence, Castelblanco was allegedly standing in the open doorway to the apartment and told Denicola and Payne that Btesh was mentally ill. (*Id.* ¶¶ 59-60.) Plaintiff maintains that Denicola and Payne entered Btesh's residence "with their firearms drawn ready and expecting to use deadly force." (*Id.* ¶ 61.) Plaintiff further alleges that once inside the apartment, Payne remained in the hallway while Denicola stepped into the living area. (*Id.* ¶ 62.) Payne and Denicola allegedly ordered Btesh to come out of his bedroom. (*Id.* ¶ 63.) Plaintiff asserts that Btesh complied and walked down the hallway toward Payne and Denicola with his hands plainly visible and empty of any weapons or objects. (*Id.* ¶¶ 64-66.) Plaintiff further maintains that as Payne and Denicola shouted orders to Btesh, they realized that he was not in control of his faculties and was unable to comply with their commands. (*Id.* ¶ 67.) Plaintiff also contends that Denicola and Payne shouted at each other from different rooms of the apartment and became excited and argumentative. (*Id.* ¶¶ 62, 69.) Plaintiff maintains that four minutes after

arriving on the scene, Denicola panicked and fired three 9mm bullets into the body of Btesh, even though Btesh had not threatened, attacked, or approached Payne or Denicola. (*Id.* ¶¶ 68, 70.) Payne allegedly took no action to prevent Denicola from shooting Btesh. (*Id.* ¶ 73.) Plaintiff asserts that as a result of the aforementioned events, Btesh suffered damages, including, but not limited to, bodily injury, aggravation of preexisting mental injuries, medical expenses, and property damage. (*Id.* ¶ 74.)

Plaintiff maintains that Denicola and Payne "concocted a scheme designed to cover-up and conceal" the shooting of Btesh by claiming that Btesh forced Payne outside the apartment and locked the front door prior to the shooting. In addition, Denicola and Payne allegedly altered the front door of the apartment to make it appear that Payne had kicked in the door. (*Id.*)

**II. Procedural History**

On November 13, 2009, Plaintiff filed a twenty-count Complaint in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida. (Doc. No. 39.) On January 12, 2010, the City of Maitland removed the case to this Court. (Doc. No. 1.) On April 26, 2010, Plaintiff filed a twelve-count Amended Complaint against the City of Maitland, Denicola, and Payne. (Doc. No. 39.) On June 8, 2010, the City of Maitland moved to dismiss Counts IX and XII of the Amended Complaint. (Doc. No. 48.) Plaintiff timely filed a response in opposition. (Doc. No. 51.)

**Standard of Review**

**I. Motion to Dismiss**

In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 323. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*

*v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'" *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citation omitted). As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## Analysis

**I. Count IX: Negligence Against the City of Maitland**

In Count IX, Plaintiff asserts that the City of Maitland is liable for negligently hiring, retaining, and training McEachern and Methias. (Doc. No. 39 at 30-31.) Plaintiff also alleges that the City of Maitland is vicariously liable for the negligence of McEachern and Methias in

dispatching Castelblanco's 911 call. (*Id.*) The City of Maitland argues that these claims should be dismissed because McEachern and Methias are employees of the City of Apopka and because Plaintiff does not allege facts plausibly establishing the requisite agency relationship for a claim for vicarious liability. (Doc. No. 48 at 2-3.)

### A. Negligent Hiring, Retention, and Training

To state a claim for negligent hiring, retention, or training, a plaintiff must plead facts plausibly establishing an injury caused by an employee, not merely an agent, of the defendant. *See, e.g.*, *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1286 (M.D. Fla. 2009); *Anderson Trucking Serv., Inc. v. Gibson*, 884 So. 2d 1046, 1052 n.2 (Fla. 5th DCA 2004); *Tex. Skaggs, Inc. v. Joannides*, 372 So. 2d 985, 987 (Fla. 2d DCA 1979). Plaintiff alleges that McEachern and Methias were either agents, apparent agents, employees, or servants of the City of Maitland. (Doc. No. 39 ¶¶ 16-19, 138.) The City of Maitland argues that the contrary provisions of the Interlocal Agreement precluded a finding that McEachern and Methias are sufficiently alleged to be employees of the City of Maitland. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.") (citation omitted). The Interlocal Agreement states that the City of Apopka would "absorb a maximum" of five City of Maitland dispatchers and that those five dispatchers would become employees of the City of Apopka and would "no longer be considered employees of the [City of] Maitland." (Doc. No 2-1 at 20.) The Court cannot determine at this stage of the proceedings whether this provision of the Interlocal Agreement precluded McEachern and Methias from being employed by the City of Maitland. Finding no other challenges to the sufficiency of

Plaintiff's claim of negligent hiring, retention, and supervision of McEachern and Methias, this claim will not be dismissed.

**B. Vicarious Liability**

Under Florida law, a city may be held vicariously liable for the negligent acts of its employees or agents. *See, e.g.*, *Commercial Carrier Corp. v. Indian River County*, 371 So. 2d 1010, 1015-16 (Fla. 1979); *Metro. Dade County v. Glaser*, 732 So. 2d 1124, 1125 (Fla. 3d DCA 1999). The parties dispute whether Plaintiff sufficiently pleads that McEachern and Methias were actual or apparent agents of the City of Maitland. (Doc. No. 48 at 3; Doc. No. 51 at 2-5.)

The elements of actual agency are: (1) acknowledgment by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent. *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990). "[I]t is the right of control, not actual control or descriptive labels employed by the parties, that determines an agency relationship." *Hickman v. Barclay's Intern. Realty, Inc.*, 5 So. 3d 804, 806 (Fla. 4th DCA 2009) (citing *Parker v. Domino's Pizza, Inc.*, 629 So. 2d 1026, 1027 (Fla. 4th DCA 1993)).

As discussed *supra* part I.A, the Court cannot determine at this stage of the proceedings whether the Interlocal Agreement precludes McEachern and Methias from being employed by the City of Maitland. Thus, the Court must presume as true Plaintiff's allegations that McEachern and Methias were employed by the City of Maitland as 911 dispatchers and that McEachern and Methias dispatched Maitland police officers to Btesh's residence in response to Castelblanco's 911 call. (Doc. No. 39 ¶¶ 16-19, 48, 138.) These allegations, when viewed in the light most favorable to Plaintiff, plausibly establish that the City of Maitland acknowledged that McEachern and Methias would act on behalf of the City as 911 dispatchers, that McEachern and Methias accepted that

undertaking, and that the City retained a right of control over McEachern and Methias. Accordingly, the alleged facts plausibly establish each element of an actual agency relationship.[4] Finding no other challenges to Plaintiff's claim that the City of Maitland is vicariously liable for the negligence of McEachern and Methias, the Court will not dismiss this claim.

## II. Count XII: Breach of Contract

In Count XII, Plaintiff asserts that the City of Maitland breached the Interlocal Agreement and is liable to Btesh as a third-party beneficiary. (Doc. No 39 at 31-33.) The City of Maitland argues that this claim should be dismissed because Plaintiff fails to plead facts plausibly establishing that Btesh is a third-party beneficiary of the Interlocal Agreement. (Doc. No. 48 at 3-4.)

A party has a cause of action as a third-party beneficiary to a contract if the contracting parties express an intent primarily and directly to benefit that third party or a class of persons to which that third party belongs. *Vencor Hosps. v. Blue Cross Blue Shield of R. I.*, 169 F.3d 677, 690 (11th Cir. 1999). The parties dispute, without citing any caselaw supporting their respective positions, whether the citizens of Maitland are a sufficiently defined class of third-party beneficiaries.[5] (Doc. No. 48 at 4; Doc. No. 51 at 7.)

---

[4] Because the Court finds that actual agency is sufficiently pled, the Court need not determine whether the alleged facts plausibly establish apparent agency. *See* Fed. R. Civ. P. 8(d)(2) ("If a party makes alternative statements [of a claim], the pleading is sufficient if any one of them is sufficient.").

[5] Although the Interlocal Agreement provides that it "is for the benefit of the general public," the provisions of the Interlocal Agreement plausibly establish that the citizens of Maitland were an intended class of beneficiaries. (Doc. No. 2-1 at 19-20.) The Interlocal Agreement exists to dispatch emergency services within the City of Maitland. (*Id.*) In addition, the Interlocal Agreement was enacted pursuant to Chapter 163, Florida Statutes, known as the Florida Interlocal Cooperation Act of 1969 ("FICA"), which permits:

> local governmental units to make the most efficient use of their powers by enabling
(continued...)

The Court finds no authority prohibiting the citizens of a municipality from being third party beneficiaries of a contract for public or private services. Broad classes or groups, such as minority business enterprises, may be third-party beneficiaries of a contract. *See Technicable Video Sys., Inc. v. Americable of Greater Miami, Ltd.*, 479 So. 2d 810, 812-13 (Fla. 3d DCA 1985) (reversing the dismissal of minority-owned business's claim against a cable television provider for breach of a contract between a city and the cable provider which required the cable provider to procure twenty percent of its expenditures from minority business enterprises). If minority business enterprises are a sufficiently defined class of third-party beneficiaries, it logically follows that the citizens of a municipality may also be third-party beneficiaries of a contract. Thus, Btesh may recover for the breach of a provision of the Interlocal Agreement intended by the parties to benefit Btesh as a citizen of Maitland. Finding no challenges by the City of Maitland to Plaintiff's allegations that the City of Maitland breached a provision of the Interlocal Agreement intended to benefit Btesh, the Court will not dismiss Plaintiff's claim for breach of contract in Count XII of the Amended Complaint.

**Conclusion**

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion to Dismiss the Amended Complaint by Defendant City of Maitland (Doc. No. 48) is **DENIED**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on June 29, 2010.

---

[5](...continued)
them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population, and other factors influencing the needs and development of local communities.

§ 163.01(2), Fla. Stat.

_____
PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record