**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

ALBERTO D. BTESH, as Guardian of
RONALD S. BTESH,

                         **Plaintiff,**

-vs-                                  **Case No.  6:10-cv-71-Orl-19DAB**

CITY OF MAITLAND, FLORIDA, REBECCA
DENICOLA, AMANDA PAYNE, and GARY
CALHOUN

                         **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1.      Motion to Dismiss Second Amended Complaint by Defendant Gary Calhoun (Doc.

        No. 88, filed Feb. 16, 2011); and

2.      Response to Defendant Gary Calhoun's Motion to Dismiss Second Amended

        Complaint by Plaintiff Alberto D. Btesh (Doc. No. 90, filed Feb. 25, 2011).

## Background

### I.  Plaintiff's Allegations[1]

This case is brought by Plaintiff Alberto D. Btesh as the guardian of Ronald S. Btesh

("Btesh"), a man who allegedly has the mental capacity of a nine year-old and suffers from a number

of mental illnesses.  (Doc. No. 72 ¶¶ 18, 20.)  Plaintiff maintains that Btesh's mental illnesses were

documented by four Maitland Police Department Incident Reports made prior to December 22,

---

[1] The facts presented in this Order are derived from the allegations of the Second Amended
Complaint.  These facts are included only to provide context and should not be construed as findings
of fact.

2008, the last of which was dated November 16, 2008.  (*Id.* ¶ 20.)  During each of these four incidents, the City of Maitland, through its police department, allegedly communicated with Nohemy Castelblanco, Btesh's live-in caregiver who speaks only Spanish.  (*Id.* ¶ 19.)  Plaintiff asserts that the City of Maitland had access to these incident reports documenting Btesh's mental condition.  (*Id.* ¶ 21.)

On December 22, 2008, Castelblanco allegedly called 911 to obtain emergency medical assistance for Btesh from the City of Maitland.  (*Id.* ¶ 22.)  Plaintiff asserts that an unspecified 911 operator for the City of Maitland[2] received Castelblanco's call.  (*Id.* ¶ 23.)  Plaintiff further maintains that although Castelblanco told the operator that Btesh "is crazy" and that "he attacked me," the operator became frustrated with her inability to communicate with Castelblanco and abruptly concluded that a rape had occurred.  (*Id.* ¶¶ 24-25.)  Castelblanco's call for emergency medical assistance was dispatched as a "sexual battery."  (*Id.* ¶ 26.)  Plaintiff asserts that a second 911 operator for the City of Maitland subsequently dispatched Officers Rebecca Denicola and Amanda Payne of the Maitland Police Department to Btesh's residence.  (*Id.* ¶¶ 11-14, 27.)

Plaintiff contends that upon losing contact with the 911 operator, Castelblanco immediately contacted an English-speaking friend, Alida Ramirez, who called 911 to ensure that Castelblanco's request for emergency medical assistance for Btesh was understood.  (*Id.* ¶ 28.)  Ramirez allegedly told an unidentified 911 operator that Btesh "is mentally sick" and needs "to go to the hospital."  (*Id.* ¶ 29.)  Plaintiff asserts that the operator maintained a dismissive tone with Ramirez, ignored

---

[2] Plaintiff alleges that at all times material to this case, the cities of Maitland and Apopka had an Interlocal Agreement under which the City of Apopka was delegated the duty of operating, managing, controlling, dispatching, and communicating all emergency 911 calls made from the City of Maitland ("Interlocal Agreement").  (Doc. No. 72 ¶ 6.)  A copy of the Interlocal Agreement is attached to the Second Amended Complaint.  (*Id.* ex. A.)

Ramirez's request for emergency medical services, and continued to erroneously conclude that a sexual battery had occurred.  (*Id.* ¶ 30.)

Plaintiff alleges that the City of Maitland's 911 operators and Officers Denicola and Payne had access to a database containing information about prior calls for emergency services at Btesh's home and thus knew or should have known about Btesh's mental illnesses and history of involuntary Baker Act proceedings.  (*Id.* ¶¶ 34-39.)  In addition, Plaintiff asserts that the City of Maitland knew or should have known from the 911 records that Castelblanco spoke only Spanish because such records showed that on November 16, 2008, a 911 operator requested the assistance of a Spanish-speaking operator to handle a call from Castelblanco for emergency services.  (*Id.* ¶¶ 41-42.) Plaintiff maintains that the 911 operator who received Castelblanco's call on December 22, 2008, should have requested a Spanish-speaking 911 operator to handle the call.  (*Id.* ¶ 42.)

Plaintiff alleges that Officers Denicola and Payne were not trained to respond to calls for service regarding the mentally ill, were not Crisis Intervention Team trained,[3] and were not "sworn officers specially trained and designated to handle situations involving the mentally ill in crisis." (*Id.* ¶ 44.)  Denicola and Payne allegedly had been employed by the City of Maitland as police officers for three years and eighteen months, respectively.  (*Id.* ¶¶ 45-46.)  Plaintiff maintains that by dispatching Denicola and Payne to Btesh's residence, the City of Maitland violated Maitland Police Department Policy and Procedure Directive Number 705-2001, which states:

> It shall be the policy of the Maitland Police Department to participate in the Central
> Florida Crisis Intervention Team.  Specially trained officers will respond to calls

---

[3] Crisis Intervention Team training is allegedly a course used to educate police officers on how to calm and contain situations to ensure public safety, including encounters with individuals suffering from mental illnesses.  (Doc. No. 72 ¶ 47.)

involving the mentally ill in crisis and explore alternatives to arrest when appropriate.

(*Id.* ¶ 49.)  Plaintiff further maintains that Officers Denicola and Payne were not properly trained or capable of responding to a call involving rape, sexual assault, sexual battery, or any other forcible felony.  (*Id.* ¶ 52.)  Plaintiff asserts that if Denicola and Payne believed that they were responding to a rape, sexual assault, sexual battery, or other forcible felony, the applicable police procedures required them to recognize and control the situation presented to them and wait for additional officers to assist in securing the alleged victim and entering Btesh's residence.  (*Id.* ¶ 53.)

When Officers Denicola and Payne arrived at Btesh's residence, Castelblanco was allegedly standing in the open doorway to the apartment and told Denicola and Payne that Btesh was mentally ill.  (*Id.* ¶¶ 54-55.)  Plaintiff maintains that Denicola and Payne entered Btesh's residence "with their firearms drawn ready and expecting to use deadly force."  (*Id.* ¶ 56.)  Plaintiff further alleges that once inside the apartment, Payne remained in the hallway while Denicola stepped into the living area.  (*Id.* ¶ 57.)  Payne and Denicola allegedly ordered Btesh to come out of his bedroom.  (*Id.* ¶ 58.)  Plaintiff asserts that Btesh complied and walked down the hallway toward Payne and Denicola with his hands plainly visible and empty of any weapons or objects.  (*Id.* ¶¶ 59-61.)  Plaintiff further maintains that as Payne and Denicola shouted orders to Btesh, they realized that he was not in control of his faculties and was unable to comply with their commands.  (*Id.* ¶ 62.)  Plaintiff also contends that Denicola and Payne shouted at each other from different rooms of the apartment and became excited and argumentative.  (*Id.* ¶ 64.)  Plaintiff maintains that four minutes after arriving on the scene, Denicola fired three 9mm bullets into the body of Btesh, even though Btesh had not threatened, attacked, or approached Payne or Denicola.  (*Id.* ¶ 65.)  Payne allegedly took no action to prevent Denicola from shooting Btesh, and Payne remained in the apartment with Denicola from

the time she arrived on the scene through the time Denicola shot Btesh.  (*Id.* ¶¶ 66, 68.)  Plaintiff asserts that as a result of the aforementioned events, Btesh suffered damages, including, but not limited to, bodily injury, aggravation of preexisting mental injuries, medical expenses, and property damage.  (*Id.* ¶ 69.)

Plaintiff maintains that Denicola and Payne "concocted a scheme designed to cover-up and conceal" the shooting of Btesh by claiming that Btesh forced Payne outside the apartment and locked the front door prior to the shooting.  (*Id.* ¶ 70.)  In addition, Denicola and Payne allegedly altered the front door of the apartment to make it appear that Payne had kicked in the door.  (*Id.*)

Plaintiff asserts that Defendant Gary Calhoun, as the Manager and Police Chief of the Maitland Police Department, had final policymaking authority for the policies of the City of Maitland Police Department.  (*Id.* ¶ 8.)  As a matter of policy and practice, Calhoun allegedly failed to sanction or discipline police officers, including Denicola and Payne, despite being aware of violations of Constitutional rights of citizens by the City's police officers, thereby causing and encouraging the aforementioned conduct of Denicola and Payne.  (*Id.* ¶ 72.)  Plaintiff further contends that Calhoun knowingly allowed untrained, unqualified and unsupervised police officers to respond to calls beyond their capabilities.  (*Id.*)

## II.  Procedural History

On November 13, 2009, Plaintiff filed a twenty-count Complaint in the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida.  (Doc. No. 39.)  On January 12, 2010, the City of Maitland removed the case to this Court.  (Doc. No. 1.)  On January 5, 2011, Plaintiff filed a twelve-count Second Amended Complaint against the City of Maitland, Denicola, Payne, and Calhoun.  (Doc. No. 72.)

Calhoun now moves to dismiss Counts V and IX of the Second Amended Complaint.  (Doc. No. 88.)  Plaintiff timely filed a response in opposition.  (Doc. No. 90.)

**Standard of Review**

When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  In determining the merits of the motion, a court must "accept all factual allegations in the complaint as true."  *Tellabs, Inc.*, 551 U.S. at 323.  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Once a court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," the court must next determine whether the well-pled facts "'state a claim to relief that is plausible on its face.'"  *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950 (citation omitted).  As the United States Supreme Court explained:

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* at 1949 (quotation marks and internal citations omitted) (quoting *Twombly*, 550 U.S. at 557).

On a Rule 12(b)(6) motion to dismiss, when a court considers the range of possible interpretations of the defendant's alleged conduct, if the "more likely explanations" involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible. *Id.* at 1950-51.

## Analysis

## I. Count V: Violation of 42 U.S.C. § 1983 by Gary Calhoun

In Count V of the Second Amended Complaint, Plaintiff alleges that Calhoun is liable under 42 U.S.C. § 1983 for failing to take reasonable measures to protect the public and adopting policies to minimize the consequences of police misconduct which proximately resulted in injuries to Btesh. (Doc. No. 72 ¶ 115.)  Calhoun argues that he cannot be liable as a supervisor under Section 1983 based on the alleged facts.  (Doc. No. 88 at 10-13.)

"Supervisors can be liable under section 1983 only if they actually participated in the allegedly wrongful act, or if a causal connection exists between their acts and the alleged violation." *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1560-61 (11th Cir. 1993), *modified on other grounds*, 14 F.3d 583 (11th Cir. 1994).  Because there are no allegations that Calhoun actually participated in the shooting of Btesh, Calhoun may be liable under Section 1983 only if there is a causal connection between his acts or failure to act and the alleged violation of Constitutional rights.  A causal connection between a supervisor's conduct and an alleged violation of Constitutional rights is sufficiently pled by allegations that a custom or policy implemented by the supervisor "resulted in deliberate indifference to constitutional rights." *Gonzalez v. Reno*, 325 F.3d 1228, 1234-35 (11th

Cir. 2003) (citation omitted); *see also Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991) (noting that a supervisory official "may be liable [under Section 1983] where the custom or policy established [by the official] resulted in deliberate indifference to constitutional rights" (citing *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986))).

Plaintiff contends that Calhoun knowingly allowed untrained, unqualified, and unsupervised police officers to respond to calls beyond their capabilities.  (Doc. No. 72 ¶ 72.)  Denicola and Payne allegedly were dispatched to Btesh's residence despite not being Crisis Intervention Team trained or adequately trained to respond to calls involving the mentally ill, sexual assault, or any other forcible felony.  (*Id.* ¶¶ 27, 44, 47, 52.)  The alleged dispatch of Denicola and Payne to Btesh's residence is inapposite to the City of Maitland Police Department Policy Directive stating that "[s]pecially trained officers will respond to calls involving the mentally ill in crisis . . . ."  (*Id.* ¶¶ 44, 47, 49.)  Further, Plaintiff asserts that as a matter of policy and practice, Calhoun failed to sanction or discipline police officers, including Denicola and Payne, despite being aware of violations of Constitutional rights of citizens by the City's police officers, thereby causing and encouraging the allegedly unlawful conduct of Denicola and Payne.  (*Id.* ¶ 72.)  These allegations permit a plausible inference that Calhoun was deliberately indifferent to police misconduct and assigning inadequately trained officers to incidents and that Calhoun's deliberate indifference proximately caused injury to Btesh.  *See Lewis v. West Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009) (noting that deliberate indifference exists where a supervisor is aware of a pattern of constitutional violations and fails to provide adequate training).  Therefore, the Section 1983 claim against Calhoun in Count V is well pled.

## II.  Count IX: Battery by Calhoun

Calhoun cites *Quilling v. Price*, 894 So.2d 1061, 1063 (Fla. 5th DCA 2005), in arguing that he cannot be liable for battery as alleged in Count IX of the Second Amended Complaint because he did touch or shoot Btesh.  (Doc. No. 88 at 13-14.)  Plaintiff concedes, and the Court agrees, that this argument is well-taken.  (Doc. No. 90 at 3.)  Accordingly, the battery claim against Calhoun in Count IX of the Second Amended Complaint will be dismissed.

## III.  Liability of Calhoun in His Official Capacity

Calhoun cites *Busby v. City of Orlando*, 931, F.2d 764, 776 (11th Cir. 1991), for the proposition that the claims asserted against him in his official capacity are duplicative of the claims asserted against the City of Maitland and should be dismissed.  (Doc. No. 88 at 10.)  Plaintiff concedes the "futility" of brining identical claims against both the City of Maitland and Calhoun in his official capacity.  (Doc. No. 90 at 3.)  However, the parties do not cite, and the Court does not find, any duplicative claims against the City of Maitland and Calhoun in his official capacity in the Second Amended Complaint.

### Conclusion

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that the Motion to Dismiss the Amended Complaint by Defendant City of Maitland (Doc. No. 88) is **GRANTED in part and DENIED in part**.  Count IX of the Second Amended Complaint is **DISMISSED without prejudice**.  The Motion to Dismiss is **DENIED** in all other respects.

Plaintiff has leave to file a Third Amended Complaint that comports with this Order within fourteen (14) days from the date of filing of this Order.  If Plaintiff fails to timely submit a Third

Amended Complaint, this action will proceed solely on the well-pled claims of the Second Amended Complaint.

      **DONE** and **ORDERED** in Chambers in Orlando, Florida on March 6, 2011.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record